IN THE UNITED STATES DISTRICT COURT
FOR RHODE ISLAND

| | | |
|---|---|---|
| THE HARTFORD INSURANCE COMPANY, as Subrogee of ALBERTO CARVALHAL<br><br>Plaintiff<br><br>v.<br><br>GENERAL ELECTRIC COMPANY and MIDEA USA, INC.<br><br>Defendant | ) | No. CA 06 362 S |
| EUGENIA CARVALHAL<br><br>Plaintiff<br><br>v.<br><br>GENERAL ELECTRIC COMPANY and MIDEA USA, INC.<br><br>Defendant | ) | No. CA 07 007 S |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR OBJECTION TO PORTIONS OF MAGISTRATE JUDGE ALMOND'S REPORT AND RECOMMENDATION**

NOW COME the Defendants, GENERAL ELECTRIC COMPANY and MIDEA USA, INC., by and through their attorneys, and submit this Reply in Support of their Objection to certain specific portions of Magistrate Judge Almond's October 2, 2007 Report and Recommendation on the Defendants' Motion to Preclude the Plaintiffs' Experts and for Summary Judgment. In further support of their Objection, Defendants state as follows:

## REBUTTAL ARGUMENT

In its Response to the Defendants' Objection to Magistrate Judge Almond's Report and Recommendation, Plaintiff Hartford Insurance Company cavalierly states that the Defendants' criticism of Houssein Davoodi's failure to retain "the coffeepot is simply a red herring which, while possibly casting doubt on the cause of the fire, is not sufficient evidence to disallow the testimony of an otherwise impeccable fire investigation." (Pltf.'s Memorandum of Law in Support of their Response to Defendants' Objection, p. 4) (Document No. 68-2). To the contrary, the failure of the Plaintiff's fire origin investigator to retain the coffeemaker from the Carvalhal kitchen is not a "red-herring", but merely the most tangible and clear-cut example of how Mr. Davoodi's investigation in this case is scientifically flawed and why his resultant opinions must be deemed as inadmissible pursuant to *Daubert*.

Although Plaintiff's Response acknowledges that a photograph reveals that the coffeemaker was in the vicinity of the water dispenser, Plaintiff discounts the coffeemaker's significance by making a vague reference to burn patterns. *Id.* In doing so, Plaintiff's counsel misleadingly infers that the burn pattern evidence itself enabled its fire origin investigator to rule out the coffeemaker as a potential ignition source. This inference is clearly contradicted by the record before the Court. Mr. Davoodi's own report indicates that he *examined* a coffeemaker, mixer, microwave, and a toaster oven before ruling them out as a potential ignition source for the Carvalhal fire. (Page 9 from Mr. Davoodi's written report dated September 10, 2004 is attached hereto as Exhibit A). Clearly the Plaintiff's own fire origin expert did not consider the coffeemaker to be merely a "red herring" at the time he performed his investigation of the fire scene.

The Carvalhal's coffeemaker did not turn into a "red-herring" until the Defendants demanded that it be produced for evaluation by the Defendants' fire origin expert. At that point

in time, Plaintiff's counsel was forced to concede that Mr. Davoodi had failed to retain the coffeemaker so that it could be evaluated by the Defendants' experts. (See page 10, para. 29, of Exhibit B, a true and accurate copy of Plaintiff The Hartford's Answers to the Defendants' Requests to Admit, tendered on April 10, 2007). Because Plaintiff failed to preserve the coffeemaker, Defendants' fire origin expert is unable to conduct his own examination of the appliance and thereby ***test*** Mr. Davoodi's conclusion that the coffeemaker should be ruled out as the ignition source of the Carvalhal fire.

The Plaintiff's fire investigator's failure to retain the Carvalhal's coffeemaker so that it could be evaluated by the Defendants' expert is just the most tangible and clear-cut example of how Mr. Davoodi's botched fire origin investigation denied the Defendants' experts vital evidence that they required to perform their own inquiry into the origin of this fire. While Plaintiff's counsel touts Mr. Davoodi's photographs of the Carvalhal kitchen, those pictures are of dubious value because Mr. Davoodi failed to perform any empirical measurements regarding the actual dimensions of the burns, the depth of the char, and the overall dimensions of the fire scene. In the absence of any documented measurements and without the electrical appliances which were evaluated and "ruled out" as the origin of this fire, the Defendants' experts (and more importantly, the jury) are asked to blindly rely upon Mr. Davoodi's unsubstantiated, subjective observations of the fire scene.

Fortunately, in accordance with *Daubert*, the District Court is both empowered and obligated to act as a gatekeeper and preclude jurors from relying upon what amounts to be speculative conjecture proffered by so-called experts. Even if the District Court concurs with Magistrate Judge Almond's determination that Mr. Davoodi possesses adequate credentials to

render fire origin opinions in this case, Mr. Davoodi's flawed opinions are not admissible because they were not arrived at via scientifically valid methodology as defined in *Daubert*.

> Ordinarily, a key question to be answered in determining whether a theory or technique is scientific knowledge that will assist the trier of fact will be whether ***it can be (and has been) tested.*** Scientific methodology today is based on generating hypotheses and testing them to see if they can be falsified; indeed this methodology is what distinguishes science from other fields of human inquiry.
>
> *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 at 593, 588, 113 S. Ct. 2786, 2794 (1993)(emphasis added)

Simply put, because Mr. Davoodi failed to retain critical evidence from the Carvalhal fire scene, his theory regarding its origin can no longer be tested as required by *Daubert*.

Mr. Davoodi clearly took the first step of the scientific method as described in *Daubert*. He generated at least two competing hypotheses during the course of his investigation. One hypothesis Mr. Davoodi considered was whether the coffeemaker, microwave, toaster oven, or the mixer located in the Carvalhal's kitchen was the ignition source for this fire. (Exhibit A, p. 9). In order to rule out the subject electrical appliances, Mr. Davoodi examined them. *Id.* Mr. Davoodi only saw fit to retain the mixer from the Carvalhal's kitchen. (Exhibit B, page 11, para. 33). Consequently, the Defendants' experts have been denied the opportunity to test the microwave, the toaster, and the "red-herring" coffeemaker that just happened to be in the same corner of the Carvalhal kitchen where Mr. Davoodi ultimately concluded the fire originated. Determining whether Mr. Davoodi's theory or technique amounts to scientific knowledge in light of *Daubert* turns on the key question of whether it can be (and has been) tested. Because the answer to that question is a resounding "no", the District Court must rule that his opinions in this matter are inadmissible.

Likewise, the manner in which Mr. Davoodi went about testing his second hypothesis in this matter, that the origin of this fire was the Defendants' water dispenser, does not constitute

sound scientific methodology as described in *Daubert* because it is not susceptible to testing either. If Mr. Davoodi had documented the measurements that he "took" while he was in the Carvalhal's kitchen, and if he had documented the depth of char at various points within the Carvalhal kitchen, his conclusions in this matter would be susceptible to testing and scientific validation. However, as the Defendants have argued at length in their Motion to Preclude the Testimony of the Plaintiff's Experts in this matter, Mr. Davoodi failed to preserve any empirical evidence that might serve as a basis for his opinions in this matter.

Mr. Davoodi's failures in this regard are particularly prejudicial to the Defendants because they were denied any opportunity to conduct their own fire origin investigation in this case. Mr. Davoodi's own testimony establishes that the remediation and repair of the Carvalhal's kitchen commenced within 14 days of the completion of his on-site fire investigation on February 27, 2004. (Pages 86-87, 90-91 of Mr. Davoodi's deposition transcript are attached as Exhibit C). The subject repair work, which effectively spoliated the fire scene in the Carvalhal's kitchen, was commenced (and most likely completed) well before the Defendants received initial notification that the fire had even occurred (Exhibit B, pages 3-4, paragraphs 10 and 11).

Without access to the evidence that Mr. Davoodi relied upon in reaching his opinions in this matter, the Defendants will be effectively precluded from vigorously cross-examining him regarding his belief that the fire originated in the Defendants' water dispenser. The same lack of evidence that prevents the Defendants' experts from testing Mr. Davoodi's conclusions will also preclude Defendants' legal counsel from testing Mr. Davoodi's opinions through vigorous cross-examination. Because the Plaintiff and its expert have permitted spoliation of the key evidence, barring Mr. Davoodi's opinions is the only way to prevent a jury from considering scientifically unreliable expert testimony in this case. Mr. Davoodi's unscientific opinion testimony represents

a clear-cut instance where the District Court must fulfill its responsibilities as a gatekeeper in accordance with *Daubert*.

## CONCLUSION

WHEREFORE, Defendants, MIDEA USA, INC. and GENERAL ELECTRIC respectfully request that the District Court modify Magistrate Judge Almond's Report and Recommendation in part, and enter a final Order precluding the testimony of all the Plaintiff's experts, Houssein Davoodi, Ara Nalbandian and Michael Cooney. Furthermore, Defendants respectfully request that the District Court enter final judgment in favor of the Defendants as to all claims in the Plaintiffs' Complaint.

Dated: November 1, 2007

/s/ Rodd E. Elges, Esq.
DOMINICK W. SAVAIANO
RODD E. ELGES
CLAUSEN MILLER P.C.
Firm I.D. No. 90181
10 South LaSalle Street
Chicago, Illinois 60603-1098
312/855-1010
dsavaiano@clausen.com
relges@clausen.com
Attorneys for Defendants

AND

/s/ Joseph-Anthony DiMaio, Esq.
Joseph-Anthony DiMaio, Esq.
Attorney #3910
McKinnon & Harwood
1168 Newport Avenue
Pawtucket RI 02861
(401) 723-9655
contact@mckinnonharwood.com

## CERTIFICATE OF MAILING AND ELECTRONIC SERVICE

I hereby certify that a true and correct copy of the above and foregoing was mailed to the following attorney(s) of record with sufficient postage thereon, on the 12th day of October, 2007. I hereby further certify that a true and correct copy of the above and foregoing was transmitted electronically to the following attorney(s) of record, on the1st day of November, 2007.

Mark Dana, Esq.
Robert A. D'Amico, II, Esq.
536 Atwells Ave., Suite 1
Providence, RI 02909
401.454.1212
Fax: 401.454.4809
rad@dblawri.com
mwd@mdlawri.com

Erik Loftus
Law Office of Stuart Blackburn
Two Concorde Way, PO Box 608
Windsor Locks, CT 06096
860.292.1116
eloftus@sbcglobal.net

Richard Ari Van Tienhoven, Esq.
Van Tienhoven & Cotter, Ltd.
312 South Main Street
Providence, Rhode Island 02903;
ravt.ksc@conversent.net

Joseph-Anthony DiMaio
McKinnon & Harwood
1168 Newport Avenue
Pawtucket, Rhode Island 02861
(401) 723-9655
Fax: (401) 722-9106
contact@mckinnonharwood.com

/s/ Rodd E. Elges, Esq.
Rodd E. Elges
CLAUSEN MILLER P.C.
10 S. LaSalle St.
Chicago, Illinois 60603
Phone: (312) 855-1010